| | |
|---|---|
| ROBERT BOSCH GMBH AND ROBERT BOSCH LLC, <br><br> Plaintiffs, <br><br> v. <br><br> THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS, AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A TO THE COMPLAINT, <br><br> Defendants. | Civil Action No. |

## DECLARATION OF JAY HARVEY PARAGOSO

I, Jay Harvey Paragoso, declare as follows:

1. My name is Jay Harvey Paragoso. I am a consultant for ROBERT BOSCH GmbH and its licensee in the U.S., ROBERT BOSCH LLC ("BOSCH" or "Plaintiffs") in the above identified action, and I am authorized to make this declaration on its behalf.

2. This declaration is based upon my personal knowledge of the facts stated herein or on the business records that were made at the time or in the regular course of business. If called as a witness, I could and would testify to the statements made herein.

3. Plaintiffs, Robert Bosch GmbH and Robert Bosch LLC, serve as the sales, marketing, design, and distribution arm for BOSCH brand products worldwide.

4. Robert Bosch GmbH and Robert Bosch LLC are in the business of developing, manufacturing, marketing, selling, and distributing BOSCH-branded products. The BOSCH brand is globally recognized and associated with high-quality engineering and technology products, including automotive components, power tools, industrial equipment, and household appliances.

1

Through decades of innovation, quality control, and substantial investment, the BOSCH brand has become one of the most recognizable symbols of engineering excellence worldwide. Plaintiffs develop, manufacture, market, sell, and distribute BOSCH products throughout the world, including within this Judicial District. Plaintiffs are the official source of authentic BOSCH products (hereinafter referred to as the "BOSCH Products").

5. Plaintiffs registered the BOSCH Trademarks with the United States Patent and Trademark Office under Registrations Nos: 812,033; 812,075; 812,138, 1,179,992; 1,180,033, 1,226,566 with a registration date of Feb. 8, 1983; 1,467,187, 1,569,353, 1,637,401, 1,641,945, 1,642,718, 2,088,521, 2,149,986, 2,295,602, 2,364,788, 2,718,833, 2,965,641, 3,078,075, 3,564,853, 3,761,323, 5,440,334, 6,965,965, 7,117,059, and 7,226,804 (collectively, "BOSCH Trademarks"). True and correct copies of the trademark registration certificates for the BOSCH Trademarks are attached to the Complaint as Exhibit 1.

6. BOSCH manufactures and sells products through its own online webstores and licenses the use of the BOSCH Trademarks to a limited number of manufacturers whose products are sold online worldwide. The presence of the BOSCH Trademarks increases the value of BOSCH products by enhancing brand awareness and consumer confidence.

7. The above registrations for the BOSCH Trademarks are valid, subsisting, and in full force and effect.

8. The BOSCH Trademarks are distinctive and identify the merchandise as goods originating from Plaintiffs.

9. The BOSCH Trademarks have been continuously used and never abandoned.

10. Plaintiffs have expended substantial time, money, and other resources in developing, advertising, and otherwise promoting the BOSCH Trademarks. As a result, products associated

with the BOSCH Trademarks are recognized and exclusively associated by consumers, the public, and the trade as being products sourced from Plaintiffs.

11. The success and widespread recognition of the BOSCH brand has resulted in significant counterfeiting. Consequently, Plaintiffs have implemented a comprehensive anti-counterfeiting program and regularly investigate suspicious websites and online marketplace listings identified through external vendors in proactive Internet sweeps. Plaintiffs have identified numerous individuals, fully interactive Internet commercial websites and marketplace listings on online third-party platforms, including those identified in Schedule A attached to the Complaint (the "Seller Aliases"), which are offering for sale, selling, and importing counterfeit products bearing Plaintiffs' federally registered BOSCH Trademarks (the "Infringing Products") to consumers in this Judicial District and throughout the United States.

12. I perform, supervise, and/or direct investigations related to Internet-based infringement of the BOSCH Trademarks. Our investigation shows that Defendants use Internet stores to sell Infringing Products from foreign countries, including China, to consumers in the U.S. and elsewhere. I personally analyzed, or directly supervised the analysis of, the Seller Aliases and determined that Infringing Products were being offered for sale and shipped to consumers in the United States, including to addresses in New York, and elsewhere in the Southern District of New York. This conclusion was reached through visual inspection of the products listed for sale on the Seller Aliases, the price at which the Infringing Products were offered for sale, other features commonly associated with websites selling counterfeit products, the ability to ship to the United States, including New York, and because Defendants and their Internet Stores do not conduct business with Plaintiffs and do not have the right or authority to use the BOSCH Trademarks for

any reason. True and correct copies of screenshot printouts showing the active Seller Aliases reviewed are attached as Exhibit 3 to the Complaint.

13. Upon information and belief, Defendants facilitate sales by designing the Seller Aliases so that it appears to unknowing consumers to be an authorized online retailer, outlet store or wholesaler selling genuine BOSCH brand products. The Seller Aliases look sophisticated and accept payment in U.S. dollars via credit cards, PayPal, and others. The Seller Aliases include images and design elements that make it very difficult for consumers to distinguish it from an authorized seller's website. Defendants further perpetuate the illusion of legitimacy by using indicia of authenticity and security that consumers have come to associate with authorized retailers, including the AmEx®, Apple Pay®, Visa®, MasterCard®, and PayPal® logos. Plaintiffs have not licensed or authorized Defendants to use the BOSCH Trademarks.

14. Upon information and belief, Defendants also deceive unknowing consumers by using the BOSCH Trademarks without authorization within the content, text, and/or meta tags of the Seller Aliases in order to attract various search engines crawling the Internet looking for websites relevant to consumer searches for BOSCH products. Additionally, upon information and belief, Defendants use other unauthorized search engine optimization (SEO) tactics and social media spamming so that the Seller Aliases' listings show up at or near the top of relevant search results and misdirect consumers searching for genuine BOSCH products. Further, from experience, we have seen that others similar to the Defendants utilize similar illegitimate SEO tactics to propel new listings to the top of search results after others are shut down.

15. Defendants have gone to great lengths to conceal their identities and often provide only an email address and telephone number as contact information, which are often found to be fake. Counterfeiters often use specialized services that conceal the owners' identity, contact

information and Internet IP addresses. Upon information and belief, counterfeiters regularly create new internet stores on various platforms. Counterfeit website registration patterns are one of many common tactics used by counterfeiters and knockoff sellers, like the Defendants, to conceal their identities, the full scope and interworking of their counterfeiting operation, and to avoid being shut down.

16. Based on my investigation and comparison of the Seller Aliases, even though Defendants operate under multiple fictitious names, there are numerous similarities among the Defendants' Seller Aliases. For example, many of the Defendant Seller Aliases have virtually identical layouts, even though different aliases were used to register the respective domain names. In addition, Counterfeit and/or Infringing BOSCH Products for sale in the Defendant Seller Aliases bear similar irregularities and indicia of being counterfeit to one another, suggesting that the Counterfeit and/or Infringing BOSCH Products were manufactured by and come from a common source and that, upon information and belief, Defendants are interrelated. The Defendants' Seller Aliases also include other notable common features, including use of the same Internet Store registration patterns, unique product listing description and layouts, accepted payment methods, check-out methods, meta data, illegitimate SEO tactics, HTML user- defined variables, domain redirection, lack of contact information, identically or similarly priced similar hosting services, similar name servers, and the use of the same text and images.

17. In addition to operating under fictitious names, Defendants in this case and defendants in other similar cases against online counterfeiters use a variety of other common tactics to evade intellectual property enforcement efforts. For example, counterfeiters like Defendants will often register new Internet Stores under new aliases once they receive notice of a lawsuit. Counterfeiters will also often move website hosting to rogue servers located outside the United

States once notice of a lawsuit is received. Rogue servers are notorious for ignoring take down demands sent by intellectual property owners. Counterfeiters also typically ship products in small quantities via international mail to minimize detection by U.S. Customs and Border Protection.

18. Counterfeiters such as Defendants typically operate multiple credit card merchant accounts as well as third-party online marketplace platform accounts behind layers of payment gateways so that they can continue operations in spite of Plaintiffs' enforcement efforts. Upon information and belief, counterfeiters such as Defendants maintain offshore bank accounts and regularly move funds from their credit card merchant accounts and third-party online marketplace platform accounts to offshore bank accounts outside the jurisdiction of this Court.

19. Monetary damages alone cannot adequately compensate Plaintiffs for Defendants' ongoing infringement because monetary damages fail to address the loss of control over, and damage to, Plaintiffs' reputation and goodwill. Furthermore, monetary damages are difficult, if not impossible, to fully ascertain due to the inability to completely quantify the monetary damage caused to Plaintiffs' reputation and goodwill by Defendants' acts of infringement.

20. Plaintiffs' goodwill and reputation are irreparably damaged when the BOSCH Trademarks are used in connection with goods not authorized, produced, or manufactured by Plaintiffs. Moreover, consumer brand confidence is damaged, which can result in a loss of future sales and market share. The extent of harm to Plaintiffs' reputation and goodwill, and the possible diversion of customers due to loss of brand confidence, are largely unquantifiable.

21. Plaintiffs are further irreparably harmed by the unauthorized use of the BOSCH Trademarks because counterfeiters take away Plaintiffs' ability to control the nature and quality of products bearing the BOSCH Trademarks. Loss of quality control over goods using the BOSCH

Trademarks and, in turn, loss of control over Plaintiffs' reputation is neither calculable nor precisely compensable.

22.     The sale of Infringing Products using the BOSCH Trademarks also causes consumer confusion, which weakens the BOSCH brand's recognition and reputation. Consumers who mistakenly believe that the Infringing Products they have purchased originated from Plaintiffs will come to believe that Plaintiffs offer low-quality products. Inferior quality products will result in increased skepticism and hesitation in consumers presented with genuine BOSCH brand products, resulting in a loss or undermining of Plaintiffs' reputation and goodwill. Furthermore, Infringing Products, primarily coming from China, can be extremely dangerous and present alarming safety hazards to children.

23.     Plaintiffs are further irreparably damaged due to a loss of exclusivity. BOSCH products are meant to be exclusive. Plaintiffs' extensive marketing and distribution of BOSCH products are aimed at growing and sustaining sales of BOSCH Products. The BOSCH Trademarks are distinctive and signify to consumers that the products originate from Plaintiffs and are manufactured to Plaintiffs' high-quality standards. When counterfeiters use the BOSCH Trademarks on goods without Plaintiffs' authorization, the exclusivity of Plaintiffs' BOSCH products, as well as Plaintiffs' reputation, are damaged and eroded, resulting in a loss of unquantifiable future sales.

24.     Plaintiffs will suffer immediate and irreparable injury, loss, or damage if an ex parte Temporary Restraining Order is not issued in accordance with Federal Rule of Civil Procedure 65(b)(1).

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on March 18, 2026.

_____
Jay Harvey Paragoso